*Formatted for Electronic Distribution*                    *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
08/08/2025

_____

In re:

**Daniel A. Susco,**                              **Case # 24-10204**
            **Debtor.**                           **Chapter 13**

_____

**Daniel A. Susco**
**and Andrea Celli, in her capacity**
**as Chapter 13 Trustee,**
            **Plaintiffs,**

            **v.**                                **Adv. Pro. No. 24-01007**

**Thomas J. Hooker**
**and Town of Mount Holly,**
            **Defendants.**

_____

*Appearances:*

*Gregory Fox, Esq.*                     *Andrea E. Celli, Esq.*
*Vermont Legal Aid*                     *Albany, NY  12207*
*Montpelier, Vermont*                   *Chapter 13 Trustee*
*For the Debtor*

*Michael B. Fisher, Esq.*                *Kevin L. Kite, Esq.*
*Fisher Law Offices, PLLC*              *Carroll, Boe & Kite, P.C.*
*Hanover, New Hampshire*                *Middlebury, Vermont*
*For Thomas J. Hooker*                  *For Town of Mount Holly*

### MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

    In this adversary proceeding, Debtor Daniel A. Susco, joined by Andrea Celli in her

capacity as Chapter 13 Trustee,[1] and Defendant, the Town of Mount Holly (the Town), seek

_____
[1] For ease of reference, throughout this decision "Debtor" shall refer to Debtor and the Trustee collectively.

judgment as a matter of law as to whether: (1) the pre-petition tax sale of Debtor's property, expiration of Debtor's right of redemption under Vermont law and subsequent issuance of a tax-collector's deed constitute avoidable transfers under §§ 547 and 548 of the Bankruptcy Code;[2] (2) whether Debtor's loss of equity above and beyond his outstanding tax obligations constitute a taking under the United States and Vermont Constitutions; (3) whether Debtor's loss of equity constitutes an excessive fine under the United States Constitution; and (4) whether Thomas J. Hooker, as the successful bidder at the pre-petition tax sale has been unjustly enriched.[3]

For the reasons articulated below, the Court denies Debtor's Motion for Summary Judgment and grants summary judgment for the Town, except for Debtor's unjust enrichment claim, which is denied as to both parties.[4]

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court determines that pursuant to 28 U.S.C. § 157(b)(2)(F), (H), and (O), this proceeding contains core matters, as it primarily involves the determination, avoidance and recovery of preferences and fraudulent conveyances, over which this Court has constitutional authority to enter

---

[2] Unless otherwise indicated, all statutory references refer to Title 11 of the United States Code (the "Bankruptcy Code").

[3] *See* Debtor's Motion for Summary Judgment [ECF 48]; Statement of Undisputed Material Facts in Support of Debtor's Motion for Summary Judgment [ECF 49]; Declaration of Gregory W. Fox in Support of Debtor's Motion for Summary Judgment [ECF 50]; Memorandum of Law in Support of Debtor's Motion for Summary Judgment [ECF 51]; Town of Mount Holly's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF 55]; Town of Mount Holly's Statement of Undisputed Facts [ECF 56]; Declaration of Co-Plaintiff Andrea E. Celli, in her capacity as Chapter 13 Trustee, in support of Plaintiffs' Motion for Summary Judgment [ECF 57]; Debtor's Memorandum of Law in Opposition to Town of Mount Holly's Motion for Summary Judgment [ECF 58]; Defendant Thomas J. Hooker's Affidavit of Disputed Material Facts in Support of Opposition to Debtor's Motion for Summary Judgment [ECF 59]; Town's Opposition to Plaintiff's Motion for Summary Judgment [ECF 62]; Defendant Thomas J. Hooker's Memorandum of Law in Support of His Opposition to the Debtor's Motion for Summary Judgment [ECF 63]; Reply in Support of Debtor's Motion for Summary Judgment [ECF 66].

[4] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 9014 and 7052.

a final judgment. Debtor's inclusion of an unjust enrichment claim under Vermont law falls under this Court's "related to" jurisdiction, over which the parties may consent to this Court's entry of a judgment.[5] The parties have not consented to this Court's entry of judgment.[6]

## FACTUAL BACKGROUND

While the parties dispute the legal effect of the underlying facts, the majority of the facts themselves are not in dispute.[7] In May 2003, Debtor's late father purchased real property located at 2380 VT Route 103N, Mount Holly, Vermont 05758 (the Property).[8] After his father died in 2011, Debtor became owner of the Property by Decree of Distribution of the Probate Division of the Vermont Superior Court, Rutland Unit.[9] Since Debtor has owned the Property, there has been no mortgage on the Property.

Shortly after acquiring the Property, Debtor fell behind on his property taxes. As a result, in 2017 the Town conducted a tax sale pursuant to Vermont Statute 32 V.S.A. §§ 5252 – 5262 (the Vermont Statute), and the Property was purchased by a third party for $15,500 (the 2017 Tax Sale).[10] Following expiration of the Vermont Statute's one-year redemption period, a deed for the Property was issued to the third-party, who moved to evict Debtor.[11] Debtor challenged the eviction and tax sale process in Vermont Superior Court, which ultimately found the 2017 Tax Sale violated Debtor's due process rights based upon issues with notice to Debtor.[12] Consequently,

---

[5] 28 U.S.C. § 157(c)(1)-(2).

[6] ECF 21.

[7] "Indeed, the Debtor does not dispute any of the facts listed in the Town's Statement of Undisputed Material Facts, which are generally consistent with the Debtor's Statement of Undisputed Material Facts filed in support of his Motion for Summary Judgment." ECF 58 p. 2 (citations omitted).

[8] ECF 49 ¶ 3; ECF 62-1 ¶ 3.

[9] ECF 49 ¶ 7; ECF 62-1 ¶ 7; ECF 56 ¶ 1.

[10] ECF 49 ¶ 8; ECF 62-1 ¶ 8.

[11] *See* 32 V.S.A. §§ 5260 and 5261; ECF 49 ¶ 9; ECF 62-1 ¶ 9.

[12] ECF 49 ¶¶ 10-11; ECF 62-1 ¶¶ 10-11.

the 2017 Tax Sale was vacated and the deed issued to the third-party was deemed null and void.[13]

Although Debtor successfully regained possession of the Property through litigation, he still owed the outstanding property taxes to the Town and additional taxes became due. Debtor failed to pay taxes due on the property for tax years 2016-17, 2017-18, 2018- 19, and 2022-23.[14]

On April 18, 2023, the Town, through its counsel, notified Debtor about the outstanding amount of taxes ($25,559.36, exclusive of interest and penalties) and offered to waive the accrued interest and penalties if the taxes were brought current prior to any tax sale proceedings.[15] The Town did not receive payment and on July 11, 2023, the Town Tax Collector executed a Notice of Levy for Delinquent Taxes and Description of Property Levied Upon, which announced the Town's intention to sell the Property at a public auction on August 24, 2023.[16]

Debtor received notice of the tax sale.[17] In addition to notice via certified mail and first-class mail, the Town caused the notice of tax sale to be personally served on Debtor via sheriff.[18] The notice of tax sale was published for three successive weeks in The Rutland Herald, a daily newspaper commonly circulated within the area of the Property.[19] There is no dispute the Town complied with the statutory procedures for tax sales as provided in 32 V.S.A. §§ 5251– 5263.[20]

On August 24, 2023, as noticed, the Town conducted a second tax sale (the 2023 Tax Sale) and the Property was sold to Defendant Thomas J. Hooker at a public auction.[21] Multiple bidders

---

[13] *Id.*

[14] ECF 49 ¶ 14; ECF 62-1 ¶ 14; ECF 56 ¶ 2; ECF 58 p.2.

[15] ECF 49 ¶ 13; ECF 62-1 ¶ 13.

[16] ECF 56 ¶ 3 and 56-1, Exhibit A.

[17] ECF 56 ¶ 5.

[18] ECF 56-1, at p. 6; ECF 58 at p. 3.

[19] ECF 56-1, Exhibit A.

[20] ECF 56 ¶ 4; ECF 39 at p. 1.

[21] ECF 56 ¶8.

attended and participated in the bidding on the Property.[22] Mr. Hooker outbid the other participants

with the highest bid of $35,000.[23] The highest bid exceeded the amounts owed to the Town.[24] Of

the $35,000 purchase price, $23,635.67 went to the Town for unpaid property taxes, interest,

penalties, and legal costs and $329.36 went to the Town's tax collector for his fee.[25] As of date of

the 2023 Tax Sale, Debtor owed the Town $23,965.03 for unpaid taxes and the Town's tax

collector's fee. The Town did not retain the surplus. Rather, the $11,034.97 surplus (the Surplus)

was paid to the Treasurer of the Town to be held in escrow until Debtor either redeemed the

Property or the one-year redemption period expired.[26] On the date of the 2023 Tax Sale, the

Property was assessed for tax purposes at $225,000.[27]

On September 14, 2023, the Tax Collector filed a Report of Tax Sale in the Mount Holly

Land Records as required by 32 V.S.A. § 5252.[28] The Report details the Tax Collector's actions,

none of which are in dispute. On May 16, 2024, which was within 90 and 120 days of the expiration

of the one-year redemption period of August 24, 2024, the Town sent Debtor written notice of the

redemption period and amount as required by statute.[29] On August 24, 2024, the redemption period

expired.[30]

Debtor did not redeem the Property and lost his equitable right of redemption.[31]

---

[22] ECF 56 ¶¶ 9-13.

[23] *Id.*; ECF 56-1, Exhibit A.

[24] ECF 56 ¶18.

[25] ECF 49 ¶ 18.

[26] ECF 49 ¶¶ 19-22; ECF 62-1 ¶¶ 19-22.

[27] ECF 49 ¶ 26; ECF 62-1 ¶ 26.

[28] ECF 56 ¶ 19; ECF 56-1 at p. 7.

[29] ECF 56 ¶ 20; ECF 56-1 at p. 15.

[30] *See* 32 V.S.A. § 5260; ECF 49 ¶ 20; ECF 56 ¶ 21.

[31] ECF 49 ¶ 20; ECF 56 ¶ 22; ECF 62-1 ¶ 20.

Consequently, in keeping with the Vermont Statute, after the expiration of the redemption period, on August 26, 2024, the Tax Collector issued a Tax Collector's Deed to Mr. Hooker which was recorded in the Mount Holly Land Records on August 26, 2024 in Vol. 104 at Page 268.[32]

Also, in keeping with the Vermont Statute, on September 5, 2024, the Town sent Debtor a check for the Surplus, plus accrued interest, in the amount of $11,361.59.[33] Rather than cashing the check from the Town, Debtor endorsed the check to Vermont Legal Aid, which is currently holding those funds in a client trust account.[34] On September 27, 2024 (the Petition Date), Debtor commenced his Chapter 13 case.[35] On October 10, 2024, Debtor filed his Complaint to initiate the adversary proceeding before the Court.[36]

Although the parties agree to the foregoing facts, the Court must address one point of divergence – the fair market value of the Property as of the date of the 2023 Tax Sale and as of the date the Tax Collector issued the deed. Value is central to Debtor's claims as he focuses on the transfer of his equity above and beyond his tax obligations. Debtor maintains the Property was worth upwards of $350,000 at both the time of the 2023 Tax Sale and when Mr. Hooker received the deed.[37] This assertion is based primarily on an appraisal obtained by the Debtor in August 2024.[38] While Defendants don't argue any specific value be assigned to the Property, they maintain Debtor's appraisal is not accurate and the Property is likely worth significantly less. In support of their position, Defendants note the appraisal was done without entering the Property and therefore

---

[32] ECF 49 ¶ 21; ECF 56 ¶ 23; ECF 62-1 ¶ 21.

[33] ECF 49 ¶ 22; ECF 62-1 ¶ 22.

[34] ECF 49 ¶¶ 23-24; ECF 62-1 ¶¶ 23-24.

[35] Main case ECF 1.

[36] ECF 1.

[37] ECF 49 ¶¶ 27-30; ECF 62-1 ¶¶ 27-20.

[38] *Id.*

failed to account for serious defects with the Property – such as mold, rodents, and structural damage which are not readily apparent.[39]

The Court finds the parties' evidence of fair market value is in no way determinative, and the Court shall not make any findings as to what the Property was worth at any point. For the purposes of this memorandum opinion, it is sufficient to conclude that there is disagreement as to the fair market value.[40]

## PROCEDURAL BACKGROUND

Debtor moves for summary judgment on each of the claims in his First Amended Adversary Proceeding Complaint. Namely: (1) avoiding the transfer of the Property to Mr. Hooker as a preferential transfer pursuant to § 547(b); (2) avoiding the transfer of the Property to Mr. Hooker as a constructively fraudulent transfer pursuant to §§ 548 (a)(1)(B) or 544(b), by application of 9 V.S.A. § 2288(a)(2); (3) recovering, restoring and preserving the Property to the bankruptcy estate pursuant to §§ 550(a) and 551, to be administered as an asset of Debtor's bankruptcy.

Alternatively, to the extent the transfer is not avoided and recorded, Debtor seeks a final judgment as a matter of law: (1) in reliance upon *Tyler v. Hennepin County,*[41] declaring Mr. Hooker and the Town violated Debtor's rights under the Takings Clause of the Fifth Amendment to the United States Constitution and the Vermont Constitution, Chapter I, Article 2; (2) under 42 U.S.C. §1983, declaring Mr. Hooker and the Town violated Debtor's rights under the Excessive Fines Clause of the Eighth Amendment to the  United States Constitution; and (3) Mr. Hooker was

---

[39] *Id.*

[40] "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985).

[41] 598 U.S. 631, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023).

unjustly enriched under Vermont law. Pursuant to these claims, Debtor asserts he is entitled to compensatory damages in the amount of $341,173.38, representing the alleged fair market value of the Property less the unpaid taxes and Surplus in addition to reasonable attorney's fees and costs under 42 U.S.C. § 1983.

The Town of Mount Holly and Mr. Hooker (collectively, Defendants) maintain the elements for avoidable transfers, whether preferential under § 547 or constructively fraudulent under § 548 cannot be met for a myriad of reasons.[42] As to Debtor's claims that the expiration of the right to redeem the Property following the 2023 Tax Sale as of August 24, 2024 and the issuance of the tax collector's deed to the Property to Mr. Hooker on August 26, 2024 constitute avoidable preferential transfers under § 547(b), the Town claims the fixing of the Town's statutory lien is not avoidable under § 547(c)(6). Alternatively, Defendants claim they are entitled to judgment as a matter of law because Debtor cannot establish the requisite elements of § 547(b). Namely, the Town received the precise amount it would have received in a Chapter 7 and Mr. Hooker was not a "creditor" of Debtor and does not stand in the shoes of the Town. As to Debtor's claim for avoidance of the 2023 Tax Sale as constructively fraudulent under § 548 and the Vermont equivalent, Defendants argue, as an issue of first impression, that the presumption of reasonably equivalent value articulated by the United States Supreme Court in *BFP v. Resolution Trust Corp.,*[43] should apply to a Vermont tax sale conducted in accordance with Vermont statute. There is no dispute the prepetition tax sale was conducted in accordance with Vermont statute.

Lastly, as to Debtor's constitutional claims, Defendants argue the elements of a taking under either the United States or Vermont Constitutions or an excessive fine claim under the

---

[42] The Town's Motion for Summary Judgment argues judgment as a matter of law is proper as to each of Debtor's counts [ECF 55] and those arguments are incorporated by reference into Mr. Hooker's Opposition [ECF 63].

[43] 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

United States Constitution cannot be satisfied as a matter of law. *Tyler v. Hennepin County* is factually distinguishable under Vermont law such that no claim for either a taking or excessive fine can withstand summary judgment. After the parties fully briefed their respective positions, the Court held oral argument on the motions and considers the motions fully submitted.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[44] A movant has the initial burden of establishing the absence of any genuine issue of material fact.[45] A fact is "material" if it "might affect the outcome of the suit under governing law."[46] An issue of fact is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[47] If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[48] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[49]

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and

---

[44] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 n.4, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted).

[45] *See id.*at 322-23, 106 S.Ct. 2548.

[46] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[47] *Id.*

[48] *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[49] *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).

inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party."[50] "If, when, viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate."[51]

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other.[52] As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration.

<u>DISCUSSION</u>

A.      **Vermont's Tax Sale Process**

In Vermont, municipalities, such as the Town, have a structured process through which they may collect delinquent property taxes, which includes selling the property at a public auction. The process is set forth in Title 32 of the Vermont Statutes Annotated (V.S.A.). The relevant Vermont statute sections are 32 V.S.A. §§ 5252 – 5262, which outline Vermont's procedures related to the levy and sale of property upon which there are delinquent taxes.[53] Because those statutes govern the inquiry before the Court, an overview of the Vermont tax sale process follows.

Taxes lawfully assessed upon real estate in Vermont constitute a first lien.[54] Section 5252 provides that when a taxpayer is delinquent, the collector of taxes of a town may extend a warrant

---

[50] *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.,* 477 U.S. at 330 n. 2, 106 S.Ct. 2548 (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir. 1995).

[51] *Pereira v. Cogan,* 267 B.R. 500, 506 (S.D.N.Y. 2001).

[52] *See Byrne v. Rutledge,* 623 F.3d 46, 53 (2d Cir. 2010).

[53] Descriptions of the applicable Vermont statutes are to those which were in effect as of the 2023 Tax Sale.

[54] 32 V.S.A. § 5061(a) (The first lien commences as of the date of the filing by the listers of the grand list in the office of the town clerk of the town).

on the land. Subsequently, if the appropriate procedures are followed, the town *shall* sell the land at public auction.[55]

Prior to any tax sale, the statute requires certain notices be given – the delinquent tax collector must give written notice of the intention to sell the property to the taxpayer[56] and the public by recording the warrant in the Land Records, posting in a public place, and via publication.[57] The tax collector must publish notice of the tax sale for "three weeks successively in a newspaper circulating in the vicinity, the last publication to be at least 10 days before such sale."[58] The statute provides the form of advertisement and notice of sale, which is by public auction subject to competitive bidding.[59]

If proper notice is given and the tax with costs and fees is not paid before the day of sale, the statute directs "the real property on which the taxes are due shall be sold to pay such taxes, costs and fees."[60] At the tax sale, the "highest bidder"[61] acquires the inchoate right to have title to the property transferred to him or her if the taxpayer fails to redeem the property within one year of the date of the tax sale.[62] Participating bidders may be third parties, the taxpayer, or (in limited circumstances) the town.[63] The town is authorized to purchase a property at tax sale only "if a bid not equal to the tax and costs is made at [the tax] sale."[64]

---

[55] 32 V.S.A. § 5254(a).

[56] 32 V.S.A. § 5252(a)(3).

[57] 32 V.S.A. § 5252(a)(1), (a)(2) and (a)(5).

[58] 32 V.S.A. § 5252(a)(2).

[59] 32 V.S.A. § 5253.

[60] 32 V.S.A. § 5254.

[61] 32 V.S.A. § 5255.

[62] *See* 32 V.S.A. §§ 5260 and 5261.

[63] 32 V.S.A. § 5259.

[64] *Id.*

After a tax sale is conducted, the property is not conveyed immediately to the purchaser. The taxpayer has the right to redeem the property during the year following the date of the tax sale, hence the purchaser's inchoate right to have title to the property transferred.[65] The taxpayer may also seek judicial review of the tax sale at any time within one year of the date the tax collector extends the levy.[66] If the taxpayer redeems the property, the tax collector is prohibited from conveying the property to the tax sale purchaser.[67] However, if the taxpayer does not redeem the property, then the tax collector is required to convey the property to the tax sale purchaser via a tax collector's deed.[68] The language of the Vermont tax sale statute directs steps to be taken by the tax collector. The statute does not afford any independent rights to the tax sale purchaser, or highest bidder, to pursue redemption or conveyance.

**B.      Section 547 Preferential Transfers**

In his First Amended Complaint, pursuant to § 547(b) Debtor alleges this Court should avoid two transfers as preferential: (1) the involuntary transfer of the Property to or for the benefit of Mr. Hooker upon the expiration of Debtor's right of redemption on August 24, 2024; and (2) the issuance of the tax collector's deed to Mr. Hooker on August 26, 2024. Debtor claims each transfer is avoidable as preferential to Mr. Hooker.[69]

Prior to analyzing the requisite elements for an avoidance action under § 547(b), the Court must first address an exception to an avoidance action argued by the Town. Pursuant to § 547(c)(6),

---

[65] 32 V.S.A. § 5260.

[66] 32 V.S.A. §§ 5294(4), 5295(3).

[67] 32 V.S.A. § 5260(a).

[68] 32 V.S.A. § 5261.

[69] While Debtor lumps the Town and Mr. Hooker together for most of the claims in the First Amended Complaint, the Town asserts this distinction demonstrates Debtor's acknowledgement the elements of a preferential claim cannot be satisfied as to the Town since the Town received no greater amount than it would have under Chapter 7 of the Code.

a trustee's ability to avoid "the fixing of a statutory lien" is limited. The Town argues because the two transfers Debtor seeks to avoid, the expiration of Debtor's right of redemption and subsequent issuance of the tax collector's deed, arose in furtherance of a statutory lien, the transfers fall within this exception.[70] Debtor claims the exception does not apply because the transfers themselves are separate and distinct from the "fixing" of the lien on the Property.[71] The Court agrees. As the exception only applies to the "fixing" of the lien and does not extend to cover actions related to and/or furtherance of a statutory lien, it does not apply here.

For either of Debtor's alleged transfers to be avoided as preferential under § 547(b), each transfer must have been: (1) the transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety days of the filing of the bankruptcy petition; *and* (6) it must enable the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Bankruptcy Code.[72]  Debtor bears the burden of proof to establish each of these elements by a preponderance of the evidence.[73] The Court will address each transfer in turn.

Elements one, four, and five are met. No dispute exists that the expiration of Debtor's right of redemption and the issuance of a tax collector's deed constitute "transfers" under the Code. Section 101(54) defines "transfer" as: "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i)

---

[70] ECF 55 at pp. 13-15.

[71] ECF 58 at pp. 18-20.

[72] § 547(b) [emphasis added]; *Benoit v. Lund*, 330 B.R. 105, 110 (D. Vt. 2004).

[73] *Cadle Co. v. Mangan (In re Flanagan),* 503 F.3d 171, 180 (2d Cir. 2007).

property; or (ii) an interest in property." Likewise, no dispute exists that a presumption of insolvency applies to Debtor for the 90 days preceding the Petition Date, or that the transfers occurred within this window. Thus, the Court must determine if elements two, three, and six are also met – looking at whether the transfers were to or for the benefit of a creditor; on account of an antecedent debt; and enabled the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Code.

Beginning with element two, whether the transfers were to or for the benefit of a creditor, Debtor argues the transfers were to and for the benefit of Mr. Hooker, who by nature of submitting the winning bid for the Property at the 2023 Tax Sale "inserted himself into Debtor's financial life and became his creditor."[74] The Code defines a "creditor" as an "entity with a claim against the debtor."[75] Debtor then cites to the Code's definition of "claim" and the United States Supreme Court's instruction that Congress enacted the Code's definition "to adopt the broadest available definition of 'claim.'"[76] The Code defines a "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance."[77] Debtor argues Mr. Hooker's investment by bidding $35,000 at the 2023 Tax Sale created a creditor relationship based on his rights to either be paid principal and interest through a redemption payment by Debtor or receive a deed to the Property.[78]

In support of his position, Debtor relies upon *In re LaMont*. In *LaMont,* the bankruptcy court, following a line of decisions under Illinois law that treat a tax purchaser's interest as a

---

[74] ECF 51 at p. 6.

[75] § 101(10).

[76] ECF 51 at p. 7, (citing *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

[77] § 101(5)

[78] *See* ECF 51, pp. 4-6; ECF 58 at pp. 16-17

secured claim (a tax lien), held that the purchaser could be treated as a creditor in the debtors'

Chapter 13 plan.[79] Unlike this case, in *LaMont* the debtors' three year right of redemption under

Illinois law had not yet expired and the Illinois statute required affirmative action on the part of

the Purchase Certificate holder to acquire title. The cases relied upon by Debtor, *LaMont* among

others, demonstrate how tax sale processes under state law can dictate whether a purchaser at a tax

sale constitutes a "creditor."[80] The Illinois statute in *LaMont* is factually distinct from the statutory

Vermont tax sale process. Under the Vermont statute, the highest bidder at a tax sale does not have

a tax lien – the municipality does – and no such affirmative action is required on the part of the

highest bidder as required under the Illinois equivalent.

Debtor claims Mr. Hooker, by virtue of being the highest bidder at the auction, was entitled

to be repaid his investment plus statutory interest or the equitable remedy of the tax collector's

deed, which renders Mr. Hooker Debtor's "creditor" under §§ 101(5) and (10). Debtor provides

no nexus between Mr. Hooker's rights and Debtor's obligations.

The Town and Mr. Hooker argue Mr. Hooker had neither a right to payment nor a right to

an equitable remedy for breach of performance and thus, cannot be a creditor of Debtor. In support

of their position, the Town and Mr. Hooker examine the mechanics of the Vermont statute

governing tax sales. Under the Vermont statute, the tax purchaser acquires the property subject to

---

[79] 740 F.3d 397, 408-09 (7th Cir. 2014).

[80] Generally, tax certificate holders step into the shoes of the taxing authority, much like a third party who purchases a promissory note from a bank, such that the tax certificate holders constitute "creditors." *See e.g., Hackler v. Arianna Holdings Co. (In re Hackler),* 938 F.3d 473, 477 (3d Cir. 2019) (affirming preference avoidance of vesting of title to property in name of tax certificate purchaser, which occurred within the preference period); *Brusznicki v. Tucker (In re Tucker)*, 653 B.R. 598, 605 (D. Md. 2023) (affirming bankruptcy court's grant of partial summary judgment on preference ground against tax certificate holder when foreclosure of right of redemption occurred within preference period); *Cf., In re Sharp,* 666 B.R. 906 (B.A.P. 9th Cir. 2025) ("Though the Bankruptcy Code's definition of a 'claim' is exceedingly broad, we cannot conjure a 'right to payment' where none exists."); *Town of Beacon Falls v. Christiano (In re Christiano),* 605 B.R. 1, 9 (Bankr. D. Conn 2019) (holding that Connecticut tax sale purchaser was not a creditor whose rights could be modified in a chapter 13 plan); *In re Richter,* 525 B.R. 735, 747-488 (Bankr. C.D. Cal. 2015) (holding that because debtor had no obligation to pay the redemption price, the tax purchaser did not hold a claim because there was no "right to payment" under §105(5)(A)).

a right of redemption, giving the purchaser an inchoate, defeasible ownership interest in the property under Vermont law. While Debtor could choose to redeem the Property within the one-year right of redemption to defeat the ownership interest, Mr. Hooker had no right to any payment from Debtor. Mr. Hooker could not compel or demand Debtor to redeem. The right of redemption did not impose any obligation on Debtor to pay the third party who purchased the property at tax sale. Mr. Hooker could not foreclose on the Property. Likewise, Mr. Hooker could not demand or compel issuance of the tax deed. The Vermont statute requires the tax collector to issue the deed.

Other courts have considered the parties' respective rights under foreclosure and redemption law.[81] In *Richter,* a nonjudicial foreclosure was completed prior to filing and while a nonjudicial foreclosure does not ordinarily provide a statutory right of redemption, under California law, a "nonjudicial foreclosure by a homeowners' association on its lien for delinquent assessments is subject to statutory redemption, allowing the former owner to redeem within 90 days of the foreclosure sale."[82] The debtor filed chapter 13 prior to expiration of the statutory redemption period. After analyzing the parties' respective rights, the bankruptcy court held that the third-party purchaser did not hold a claim against the debtor that could be addressed in bankruptcy. Relying upon § 101(5)'s definition of a "claim" as a "right to payment,"[83] the court reasoned that the purchaser had no right to payment from the debtor, so it did not qualify as a creditor:

> While it is true that a debtor will lose his remaining interest in the property as a consequence of not redeeming, the threat of this loss alone is insufficient to establish the purchaser's "right to payment." The "right to payment" requires, in addition to enforceability, that there be an obligation. Yet, with statutory redemption, what the debtor has is not an obligation or duty to pay the redemption price to avoid losing ownership of the property

---

[81] *See In re Richter,* 525 B.R. at 746-7.

[82] *Id.* at 741-42 (footnotes and citations omitted).

[83] *Id.* at 746-49

but a voluntary *right* or *opportunity* to pay the redemption price in order to regain ownership.[84]

The same reasoning applies under the Vermont tax statute. There is no mechanism for Mr. Hooker as the tax purchaser to demand or compel redemption or issuance of the deed. Therefore, Mr. Hooker held no "claim" or "right to payment" and could not compel an equitable remedy pursuant to § 101(5). It follows that Mr. Hooker was not Debtor's "creditor" under § 101(10). Debtor cannot establish the second element of his preference claims against Mr. Hooker such that Debtor's § 547 claims against Mr. Hooker fail as a matter of law.

To the extent Debtor argues preferential transfers with respect to the Town, such claims also fail. Under the Vermont statute, only the Town could be considered Debtor's "creditor." The Town had a right to payment and could compel an equitable remedy.[85] The Vermont statute requires the tax collector, acting on behalf of the Town, to take affirmative steps. No material issue of fact exists regarding the amount the Town received for Debtor's overdue taxes. To prevail against the Town on his preference claims, Debtor must establish element six: the alleged transfers enabled the Town to receive more than it would have under a liquidation case. The Town received no benefit beyond what it was owed. The Town returned the excess proceeds from the highest bid at the public auction to Debtor upon expiration of the right of redemption. Thus, Debtor's preferential claims as to the Town fail as a matter of law because the Town received only the amount of its claim that it would under the normal distributive provisions in a liquidation case under the Code.

Debtor cannot establish the requisite elements to avoid either transfer as preferential under § 547(b) with respect to either defendant. Mr. Hooker cannot be considered Debtor's "creditor"

---

[84] *Id.* at 747 (footnote and citations omitted).

[85] *See* § 101(5).

and the Town, the actual creditor, did not receive any more than it would have under the normal distributive provisions in a liquidation case under the Code. Accordingly, no genuine issues of material fact exist and summary judgment for the Town on Debtor's § 547 claims is warranted.

## C.      Section 548 Fraudulent Transfers

Debtor asserts that transfer of the Property to Mr. Hooker through the 2023 Tax Sale is avoidable as a constructively fraudulent transfer under §§ 548(a)(1)(B), and/or 544(b) (applying 9 V.S.A. § 2288(s)(2)).[86] Section 548(a)(1)(B) empowers the trustee to set aside a transfer of property if "'(1) the debtor had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer[.]'"[87] Under § 544, the trustee may also rely on the corresponding state fraudulent conveyance statute, 9 V.S.A. § 2288.[88] Despite slight differences in wording, the elements of 9 V.S.A. § 2288 are substantively identical to § 548.[89] Therefore, it is appropriate to address them together.

The parties agree this case concerns only the fourth element – whether Debtor received less than reasonably equivalent value for the transfer.[90] Debtor asserts he did not receive "reasonably equivalent value" in exchange for the 2023 Tax Sale because the Property sold for less than its estimated fair market value. Defendants disagree on Debtor's basic premise that "reasonably equivalent value" equates to fair market value.

---

[86] ECF 48, ¶ 1(b); ECF 51, pp. 11-14.

[87] § 548(a)(1)(B); *Gunsalus v. Cnty. Of Ont.,* 37 F.4th 859, 864 (2d Cir. 2022) (citing 11 U.S.C. §§ 548(a), 522(h)).

[88] § 544(b)(1).

[89] *Compare* § 548(a)(1) *with* 9 V.S.A. § 2288(a).

[90] *See* § 548(a)(1)(B). For purposes of summary judgment, Defendants assume Debtor was insolvent at the time of the 2023 Tax Sale.

When determining whether a transfer is for "reasonably equivalent value," courts consider "whether the debtor has received value that is substantially comparable to the worth of the transferred property."[91] This standard does not require a property to be transferred for fair market value. Following the 1994, United States Supreme Court in *BFP*, a foreclosure sale "properly conducted under applicable state law, conclusively establishes reasonably equivalent value for purposes of § 548(a)."[92]

In *BFP,* the subject property was sold via a judicial foreclosure sale resulting in a sale price of $433,000.[93] Months later, the debtor filed a bankruptcy petition under chapter 11 and filed a complaint seeking to avoid the transfer as fraudulent under § 548, claiming the property was actually worth $725,000 at the time of the foreclosure sale.[94] The Court recognized that "[n]o one would pay as much to own [foreclosed] property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques."[95] The Supreme Court held that in the context of a foreclosure sale, the reasonably equivalent value under § 548(a)(2) is not the "'fair market value' or 'fair foreclosure price,'" but "the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with."[96] Ultimately, the Court held "the consideration received from a non-collusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law" is conclusively presumed to be an exchange for "reasonably equivalent value" under § 548(a).[97] Critical to the Supreme Court's

---

[91] *BFP v. Resol. Tr. Corp.,* 511 U.S. 531, 548, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

[92] *Gunsales*, 37 F.4th at 865.

[93] *BFP*, 511 U.S. at 533-34, 114 S.Ct. 1757.

[94] *Id.* at 534.

[95] *Id.* at 538-39.

[96] *Id.* at 545.

[97] *Id.* at 533.

analysis was whether there was an auction or sale which would permit some degree of market forces to set the value of the property even in distressed circumstances.[98] Because distressed properties that must be sold in the time and manner established by state mortgage foreclosure law are, the Court reasoned, "simply worth less," "reasonably equivalent value" in the mortgage foreclosure context is the foreclosure sale price itself.[99]

For those reasons, the Court explained, courts may not engage in the policy judgment of setting aside a mortgage foreclosure sale merely because the sale itself yielded a price that a court deemed inadequate.[100] The Court therefore rejected the debtor's view that the $433,000 home was actually worth $725,000. Instead, because the sale was conducted in compliance with state foreclosure-by-sale law, the home was worth $433,000. Because the value received by the debtor was equal to what the home was "worth," the Court held that the debtor had necessarily received "reasonably equivalent value" under § 548.[101] In reaching its conclusion, the Court reflected on the history of foreclosure law explaining:

> [f]oreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. [102]

Because *BFP* specifically addressed a foreclosure sale, Debtor argues its holding cannot apply to tax sales like the one here. In support of his position, Debtor relies on an oft-cited footnote included in *BFP* to bolster his position that the presumption of reasonably equivalent value

---

[98] *See generally, id.*

[99] *Id.* at 549 (emphases omitted).

[100] *See id.* at 542.

[101] *See id.* at 542.

[102] *Id.* at 542.

articulated in *BFP* should not apply to Vermont tax sales.[103] The footnote states the ruling "covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different."[104] Nevertheless, federal courts have since extended the reasoning of *BFP* to tax sales.[105]

The Supreme Court's analysis of "reasonably equivalent value" in *BFP* suggests that when evaluating a transfer, the statutory scheme is most important, not the type of sale. The decisive factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure and whether surplus proceeds are returned to the delinquent taxpayer.[106]

Debtor correctly asserts that in the 30 plus years since the United States Supreme Court decided *BFP,* no court has ever applied *BFP*'s reasoning to rule that a tax sale conducted under Vermont law is presumed to have provided reasonably equivalent value.  However, Debtor's

---

[103] ECF 51 p. 14.

[104] *See BFP,* 511 at 537, n.3, 114 S.Ct. 1757.

[105] *In re Crespo,* 569 B.R. 624, 630 (E.D. Pa. 2017) (lists cases).

[106] *See Tyler,* 598 U.S. at 634, 1435 S.Ct. 1369 (former owner no opportunity to recover surplus); *Gonsalus,* 37 F.4th at 862 (under New York law, surplus not returned to former owner); *In re Hackler,* 938 F.3d at 479 (tax sale using interest rate bid down process set aside); *Sherman v. Rose (In re Sherman),* 223 B.R. 555, 558-59 (B.A.P. 10th Cir. 1998) (refusing to extend *BFP* to a tax sale conducted under Wyoming statutes that "do not permit a public sale with competitive bidding"); *In re Miranda,* 667 B.R. 386 (Bankr. E.D.N.Y. 2025), *aff'd sub nom. Miranda v. TLB 2019 LLC,* No. 25-CV-533 (ENV), 2025 WL 1530575 (E.D.N.Y. May 29, 2025) (under New York law, debtor did not have the protection of market forces as did the debtor in *BFP*); *Cf. In re Tracht Gut, LLC,* 836 F.3d 1146, 1153 (9th Cir. 2016) (applying *BFP* presumption); *In re Grandote Country Club Co., Ltd.,* 252 F.3d 1146, 1152 (10th Cir. 2001) ("Nevertheless, the decisive factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure."); *In re Jacobson,* 523 B.R. 13, 21 (Bankr. D. Conn. 2014) (applying *BFP* presumption when process includes multiple notices, public auction, and competitive bidding); *See also, In re Samaniego,* 224 B.R. 154 (Bankr. E.D. Wash. 1998); *In re Turner,* 225 B.R. 595 (Bankr. D.S.C. 1997); *In re Russell-Polk,* 200 B.R. 218 (Bankr. E.D. Mo. 1996); *In re Hollar,* 184 B.R. 243 (Bankr. M.D.N.C. 1995); *In re Golden,* 190 B.R. 52 (Bankr. W.D. Pa. 1995); *In re Lord,* 179 B.R. 429 (Bankr. E.D. Pa. 1995); *In re Sanger,* No. 1:22-AP-00051-HWV, 2023 WL 4921192 (Bankr. M.D.Pa. Aug. 1, 2023); *In re Mooney,* No. 18-33340-HDH7, 2020 WL 1884445 (Bankr. N.D. Tex. Apr. 15, 2020); and, *In re West,* No. 21-31047-JDA, 2022 WL 1309939, (Bankr. E.D. Mich. May 2, 2022). These cites are provided by way of example; they are not intended to be an exhaustive list.

inference that no court *would* apply *BFP* in this context ignores the reasoning in *BFP* and the protections found within the Vermont tax statute.[107]

The Vermont tax statute contains the protections explained by the Supreme Court in *BFP* in the revolution of the foreclosure process. The taxpayer is entitled to notice.[108] The tax sale is advertised publicly in a newspaper over three successive weeks prior to the sale.[109] The notice of sale is posted in a public location in town.[110] The property is sold at public auction by the town's tax collector and the "highest bidder" becomes the tax sale purchaser.[111] For one year, beginning with the date the tax collector extended the levy (or issued the notice to the taxpayer), a taxpayer has the right to seek judicial review of the tax sale by bringing an action to "question the validity of . . . acts of the tax collector relating to the collection of tax."[112] The taxpayer also receives one year to redeem the property.[113] The tax sale purchaser does not immediately receive title to the property; rather, if the taxpayer fails to redeem within the one-year redemption period, the tax collector is required to issue a tax collector's deed.[114] Finally, under Vermont law, the tax collector is required to forward any surplus proceeds to the taxpayer.[115] The report of sale attests to the

---

[107] Thirty plus years after *BFP,* section 548 still does not include the words "fair market value." The cases Debtor relies upon interpret other state statutory contexts which lack protections provided for within the Vermont tax statute. Debtor also relies upon this court's decision in *Chase v. Molleur (In re Chase)*, 328 B.R. 675 (Bankr. D. Vt. 2005) which analyzed the state's strict foreclosure process, then in effect, which lacked the protections provided within the Vermont tax statute.

[108] 32 V.S.A. §§ 5252 and 5253.

[109] *Id.*

[110] *Id.*

[111] 32 V.S.A. §§ 5252, 5254, 5255, and 5260.

[112] 32 V.S.A. §§ 5294 and 5295.

[113] 32 V.S.A. § 5260.

[114] 32 V.S.A. § 5261.

[115] 32 V.S.A. § 5254 (property shall be sold to recover taxes, costs and fees); *Bogie v. Barnet,* 129 Vt. 46, 55, 270 A.2d 898 (1970) (surplus to be returned to delinquent taxpayer). In *Sensenich v. Molleur (In re Chase)*, 328 B.R. 675, 681 (Bankr. D. Vt. 2005), this Court declined to extend the *BFP* presumption to Vermont strict foreclosure law because unlike the Vermont tax statutory protections, if no one redeems the property, the foreclosing mortgagee obtains full

procedures employed in the tax sale.[116]

The Town claims the Vermont tax statute's protections exceed those articulated by the Supreme Court in *BFP*. By way of example, the statute provides that the taxpayer may prevent the tax sale by paying the delinquent taxes before the tax sale.[117] The taxpayer also has the opportunity before the tax sale to request that only a "portion of the property" be sold.[118] Moreover, under Vermont law, the tax collector does *not* transfer title to a taxpayer's property until one year after the tax sale occurs, providing the taxpayer with an entire year to raise the funds required to redeem the property.[119] In addition, if the taxpayer believes that the tax sale procedures were deficient, the taxpayer is entitled to bring an action in Vermont Superior Court questioning the validity of the tax collector's acts and potentially invalidating the tax sale, provided that action is brought within one year of the date of the tax collector's levy.[120] If the taxpayer fails to redeem within the allotted one year, only then does the tax sale purchaser receive a tax collector's deed that will "convey to [the tax sale purchaser] a title against the person for whose tax it was sold and those claiming under him or her."[121] After the title to the property is conveyed to the tax sale purchaser, the municipality is required to deliver to the taxpayer any surplus proceeds from the tax sale received by the municipality.[122]

To the extent Debtor attempts to differentiate tax and foreclosure sales, the protections

---

and complete title and has the right to sell the property and retain the surplus, if any.

[116] 32 V.S.A. § 5255.

[117] 32 V.S.A. § 5254(a).

[118] 32 V.S.A. § 5254(b).

[119] 32 V.S.A. § 5260, § 5261.

[120] 32 V.S.A. § 5294(4), § 5295(3).

[121] 32 V.S.A. § 5261.

[122] *Bogie*, 129 Vt. at 55.

afforded by the Vermont tax sale statute mirror those provided within the judicial foreclosure context in Vermont. Much like the tax procedures, a judicial foreclosure requires: notice to the debtor,[123] three successive weeks of publication in a local newspaper,[124] an auction and sale to the highest bidder,[125] and a pre-transfer redemption period.[126]  Debtor argues the lack of judicial oversight throughout the entire tax sale process, which may be shorter than the judicial foreclosure process, differentiates the two.[127] Yet, Debtor acknowledges judicial review is available to the taxpayer. Vermont law offers multiple opportunities for landowners to avoid a tax sale. The Vermont tax statute provides mechanisms for repayment, redemption and procedural safeguards. Vermont law emphasizes opportunities for delinquent taxpayers to resolve their tax obligations before and after a tax sale, as well as protections to ensure due process. Debtor does not claim his due process rights were violated in conjunction with the 2023 Tax Sale; he concedes he received the various notices required under the statute and enhanced personal service when the Town issued its notice of levy. The Vermont tax statute strikes a balance between the municipality's interest in collecting taxes with the taxpayer's property rights.

Mr. Hooker acquired the Property through a regularly conducted tax sale under Vermont law subject to a competitive bidding procedure. The uncontroverted summary judgment evidence establishes that Mr. Hooker competed with other potential purchasers at the tax sale during the

---

[123] V.R.C.P. 80.1(b)

[124] 12 V.S.A. § 4952.

[125] 12 V.S.A. § 4953.

[126] V.R.C.P. 80.1(e); 12 V.S.A. § 4946(b). The redemption period within the tax statute is twice as long as that set forth in the judicial foreclosure statute and does not contain a limitation on whether the property at issue constitutes the taxpayer's primary residence.

[127] ECF 51 p. 15. Yet, although in a different procedural posture, Debtor successfully challenged the 2017 Tax Sale process in state court, which vacated the 2017 Tax Sale. The State Court specifically found the process followed in the 2017 Tax Sale violated Debtor's constitutional due process rights. *See* ECF 49 ¶ 11; ECF 50-6.

bidding process.[128] Debtor concedes the 2023 Tax Sale was conducted in accordance with Vermont law.[129]

On this issue of first impression, based upon the protections afforded under the Vermont tax statute governing tax sales, the Court holds consideration received from a non-collusive, tax sale of real estate, as a "forced sale", conducted in conformance with Vermont law is entitled to the benefit of the *BFP* per se rule – whatever amount is realized upon the sale is, by definition, reasonably equivalent value for bankruptcy avoidance purposes.[130] Accordingly, the Court denies Debtor's motion for summary judgment on Debtor's §§ 548 and 544 claims and grants summary judgment for Defendants.

**D. Constitutional Claims**

### 1. Violation of the Takings Clause

Debtor argues both the Town and Mr. Hooker violated the Takings Clause of the Fifth Amendment of the United States Constitution, and the Takings Clause of the Vermont Constitution, Chapter I, Article II. The Takings Clause of the United States Constitution states specifically "nor shall private property be taken for public use, without just compensation."[131] The Vermont Constitution does not repeat this language exactly but is substantively the same. It states, "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money."[132] Because these two clauses mirror each other, the Court shall apply them together and will specify any differences if and where distinction is necessary.

---

[128] ECF 56 ¶¶ 9-13.

[129] ECF 56 ¶ 4; ECF 39 at p. 1.

[130] *BFP*, 511 U.S. at 545, 114 S.Ct. 1757.

[131] U.S. Const. amend. V.

[132] Vt. Const. ch. I, art. 2.

Neither the State nor Federal Constitution prohibits government actors from taking private property. Rather each mandates just compensation be paid when such taking occurs.[133] To show that a takings *violation* occurred, a plaintiff must demonstrate that: (1) they held a legally cognizable interest in property;[134] (2) the government's actions amounted to a compensable taking of that property interest;[135] (3) for public use; and (4) the plaintiff was not paid "just compensation" or "equivalent in money."

The Court shall evaluate two actions – the 2023 Tax Sale and the issuance of the deed to Mr. Hooker in 2024 – as separate potential takings violations. Debtor references both actions in his filings, however he seemingly conflates the two despite material differences. Debtor jumps back and forth – stating in one sentence that his property interests "were taken from him when the Town issued the tax collector's deed to Hooker" and in the next sentence that he lost his property interests "through the 2023 Tax Sale." Although the 2023 Tax Sale and the issuance of the deed are certainly related, they are still distinct actions which occurred one year apart. Consequently, the Court must analyze them accordingly.

Before moving into analysis of these actions, the Court makes a preliminary finding that Mr. Hooker is not a government actor for the purposes of the takings clause, and therefore no takings violation occurred with respect to Mr. Hooker. Although Debtor correctly notes a third party may be liable as a government actor in certain situations,[136] his assertion that Mr. Hooker

---

[133] *See Sheetz v. Cnty. of El Dorado, Cal.*, 601 U.S. 267, 274, 144 S. Ct. 893, 218 L. Ed. 2d 224 (2024) (notes that states have "substantial authority" to regulate land use and the right to compensation is only triggered when it interferes with the owner's right to exclude others).

[134] *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

[135] *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1378 (Fed. Cir. 2008).

[136] *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) ("[A] private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity") (internal citations omitted).

fits into any of these exceptions is unsupported.

The cases upon which Debtor relies – *Roberto*[137] and *Fair*[138] – demonstrate facts inapposite to the present case. Both cases address tax sale processes that bear no resemblance (procedurally or functionally) to a tax sale conducted in accordance with 32 V.S.A. §§ 5252 – 5262. The state statutes at issue in these cases (New Jersey and Nebraska respectively) outline the process by which a town may sell tax certificates on properties at public auction.[139] Under these state statutes, purchasing a tax certificate empowers a bidder to carry out government functions (collect taxes or pursue foreclosure), and the tax certificate purchaser is considered a government actor in that context. Mr. Hooker did not purchase a tax certificate and was in no way empowered to perform any government functions. After bidding at the 2023 Tax Sale, Mr. Hooker could do nothing other than wait and see how the process unfolded between the Town and Debtor. Debtor presents no evidence to suggest or support that Mr. Hooker's decision to bid on the Property was influenced in any way by the Town, or that Defendants somehow acted in concert otherwise. Consequently, Mr. Hooker is not a government actor and Debtor's constitutional claims as to Mr. Hooker fail as a matter of law. The rest of this section shall address only actions of the Town.

### a. Issuance of the Deed

As to the issuance of the tax collector's deed, Debtor has failed to establish the elements necessary to conclude a taking occurred. Debtor fails to establish the first element as Debtor provides no evidence to support he held a legally cognizable interest in the Property at the time the tax collector issued the deed. While the takings clause protects property interests, it cannot

---

[137] *257-261 20th Ave., Realty, LLC v. Roberto*, 259 N.J. 417, 444, 327 A.3d 1177 (2025).

[138] *Cont'l Res. v. Fair*, 317 Neb. 391, 407-11, 10 N.W. 3d 510 (2024).

[139] *257-261 20th Ave., Realty, LLC v. Roberto*, 259 N.J. at 444-45 (looking at N.J.S.A. §§ 54:5-1 to 54:5-137); *Cont'l Res. v. Fair*, 317 Neb. at 407-11 (looking at NR.S.A. §§ 77-1806 to 77-1902).

create them.[140] It follows that if there is no legally cognizable interest in the property, there is no

takings violation. Importantly, property interests are governed by state law.[141]  At the time the tax

collector's deed was issued to Mr. Hooker, Debtor's right of redemption had expired. Debtor's

interest was extinguished under Vermont law. Debtor's argument seemingly suggests the issuance

of the deed deprived him of his interest in the Property, but that conclusion is misguided. Rather,

the expiration of Debtor's right of redemption extinguished his property interest and triggered the

issuance of the deed. Debtor cannot demonstrate as a matter of law under the Vermont tax statute

that the issuance of the tax collector's deed to Mr. Hooker in 2024 violates the takings clause of

either the Federal or Vermont Constitution.

### b. The 2023 Tax Sale

It is undisputed Debtor had a legally cognizable interest in the Property at the time of the

2023 Tax Sale. However, for the reasons described below, the Court ultimately reaches the same

conclusion and finds no takings violation occurred as a matter of law.

Debtor fails put forth any evidence the 2023 Tax Sale amounted to a compensable taking.

While acknowledging a plaintiff must show that a government actor "took" their property, Debtor

neglects to substantively address the requirement. In his argument, Debtor simply concludes that

his "interests in the Property and the embedded home equity were taken from him when the Town

issued the tax collector's deed to Hooker" and "these are property interests that are subject to the

Takings Clause."[142] This statement not only lacks explanation, but it also addresses only the

---

[140] *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed. 2d 174 (1998).

[141] *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

[142] ECF 51, p. 21

issuance of the deed and omits mention of the 2023 Tax Sale. Although takings can occur in many

forms – not just seizure of property – merely calling an act a taking does not make it so. Debtor

has not established the 2023 Tax Sale amounted to a compensable taking as a matter of law.

On the other hand, the Town argues the 2023 Tax Sale cannot constitute a violation of the

takings clause as a matter of law. The 2023 Tax Sale did not serve a "public use" as is necessary

to substantiate a takings violation. Debtor argues that the 2023 Tax Sale was for public use because

it enabled the Town to "collect delinquent property taxes and enhance its revenues." Although

generally, taxes serve a public purpose, a government's power to collect taxes falls under its taxing

powers rather than powers of eminent domain.[143] Collecting taxes is not considered a public use –

at least for purposes of the takings clause.[144] While the 2023 Tax Sale unquestionably allowed the

Town to collect delinquent taxes, the collection of those taxes do not constitute "public use" within

the context of an alleged takings violation.

The Town only collected what it was due – the statutory allowed fees and costs, and the

delinquent taxes (with interest) owed.  In accordance with Vermont law, the Town held all excess

---

[143] U.S. Const. art., § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."); *see also United States v. Rodgers*, 461 U.S. 677, 697, 103 S. Ct. 2132, 2144, 76 L.Ed. 2d 236 (1983).

[144] *See e.g. Speed v. Mills*, 919 F. Supp. 2d 122, 129 (D.D.C. 2013); *Balaber-Strauss v. Murphy (In re Murphy)*, 331 B.R. 107, 128 (Bankr. S.D.N.Y. 2005) ("A tax sale is not a taking for a public purpose because such sale is pursuant to the state's taxing power and not its power of eminent domain."); *see also Swinka Realty Invs., LLC v. Lackawanna Cnty. Tax Claim Bureau*, No. 3:13-CV-0076, 2016 WL 3618399, *13 (M.D. Pa. July 1, 2016) , *aff'd*, 668 F.App'x 146 (3d Cir. 2017); *Planavsky v. Broome County*, No. 3:12-CV-1030 FSJ / ATB, 2014 WL 6885928, *2 (N.D.N.Y. Dec. 8, 2014); *Dommel Props., LLC v. Jonestown Bank & Trust Co.*, No. 1:11-CV-2316, 2013 WL 1149265, *11 (M.D. Pa. Mar. 19, 2013) ("A tax sale, however, is not a taking for a public purpose pursuant to a state's power of eminent domain, but is instead an exercise of the state's taxing power. The purpose of a tax sale is not to deprive the taxpayer of property but to ensure the collection of taxes.") (internal citations omitted); *Jones v. Safi*, No. 10-CV-2398 JS ARL, 2011 WL 5524674, *4 (E.D.N.Y. Nov. 10, 2011) (citing *In re Murphy*); *Indus. Bank of Washington v. Sheve*, 307 F. Supp. 98, 99 (D.D.C 1969) ("A tax sale is not a government taking for which just compensation must be paid under the Constitution after judicial proceedings."); *In re Golden*, 190 B.R. at 57; *President & Fellows of Middlebury Coll. v. Central Power Corp. of Vt.*, 101 Vt. 325, 388 (1928) ("…the meaning of the term varies according to its application, and that the 'public use' involved in the law of eminent domain is not the 'public use' involved in the law of taxation.").

proceeds from the 2023 Tax Sale in escrow and released them to Debtor upon expiration of the

redemption period. Debtor concedes he received the Surplus and the Town only collected what

was due.  This constitutes "just compensation" or "equivalent money" paid to the Debtor. Debtor

does not deny that he was paid the Surplus. He maintains the payment was insufficient and he is

entitled to compensation equal to his lost equity in the Property. The Court disagrees.

Debtor relies heavily on *Tyler* – a case which found that while a Minnesota county had the

power to sell property to recover taxes owed, it could not retain proceeds in excess of that amount

without violating the takings clause of the Constitution.[145] As a result of *Tyler*, many state statutes

were amended to provide that any excess proceeds from a tax sale be returned to the property

owner.[146] Before *Tyler,* Vermont law provided for the payment of any excess proceeds to the

property owner.[147] Courts typically view the release of excess proceeds from the sale to constitute

"just compensation."[148] Debtor does not dispute he received excess proceeds for the 2023 Tax

Sale.

Debtor's reading of *Tyler* is broader. He posits that a property owner is not just entitled to

surplus proceeds, but also any excess equity in a property. The Court does not share Debtor's

interpretation. The Supreme Court uses the terms "excess value" and "surplus proceeds"

throughout *Tyler.* "Excess equity" is never addressed or mentioned. Based on a plain reading of

*Tyler* alone, the Court cannot justify reading "excess equity" into the holding without making

inappropriate assumptions as to the Supreme Court's intent.

---

[145] *See generally,* 598 U.S. 631, 143 S.Ct. 1369.

[146] *See e.g.*, *Cavaluzzi v. Cnty. of Sullivan*, No. 23 CIV. 11067 (PAE), 2024 WL 5238644 (S.D.N.Y. Dec. 27, 2024) (New York statute updated after *Tyler*).

[147] 32 V.S.A. § 5254; *Bogie,* 129 Vt.at 55.

[148] *See Bogie,* 129 Vt. at 55; *Freed v. Thomas*, 81 F.4th 655, 658 (6th Cir. 2023) (owner owed the difference between foreclosure sale amount and debt, plus interest… says this aligns with *Tyler*); *Cf., DuVall v. Cnty. of Ontario*, 83 F.4th 147, 155 (2d Cir. 2023) (avoidance appropriate when the county kept proceeds).

Debtor struggles to find support for his expansive interpretation of *Tyler* in applicable caselaw and instead relies primarily on *Tyler's* procedural history to bolster his position.[149] In conjunction with this reliance, Debtor asks the Court to consider a settlement agreement reached after remand to Minnesota District Court. The settlement agreement reached between the parties calculates plaintiffs' recovery, in part, on the market value of the property.[150] Although the Court appreciates the Debtor's creative strategy, such reliance is tenuous at best. It is inappropriate for this Court to make any legal determinations based on a settlement agreement in a disputed case, and the Minnesota District Court acknowledged that it made no rulings with respect to the merits of the parties' claims, other than to formally dismiss with prejudice "the operative complaints and all claims asserted therein in this Litigation."[151]

The two cases Debtor relies upon to directly support his expansive interpretation of *Tyler* are unpersuasive. Both cases interpret state law that is materially distinguishable from Vermont's. Even if the law was similar, the discussions of *Tyler* are limited, at best. *Virella* discusses *Tyler* in a very limited scope, only mentioning *Tyler* when considering if there could be "pipeline retroactivity" under New Jersey law.[152] Perhaps because not relevant to their determination, the *Virella* court offers no analysis or support for the claim that *Tyler* protects an owner's right to equity and even states that it "has not worked through all the ramifications of Tyler."[153] *Grady* expressly acknowledges "*Tyler* did not address whether a protected interest existed in the equity of a home following a tax deed transfer" and points to no authority to suggest otherwise.[154] Rather,

---

[149] ECF 58, pp. 9-10; ECF 58-1 through 58-4.

[150] ECF 58, pp. 9-10; ECF 58-1 through 58-4.

[151] ECF 58-4, Ex. D, at 8, ¶ 19.

[152] *See In re Virella*, 661 B.R. 199 (Bankr. D.N.J. 2024)

[153] *Id.* at 212.

[154] *See, Grady v. Wood County*, No. 2:24-CV-00214, 2025 WL 1234111, *3 (S.D. W.Va. Apr. 29, 2025).

*Grady* interprets two subsequent actions of the Supreme Court – the decisions to remand a case and to deny certiorari of another – to conclude that "an implication exists as to how the Supreme Court may view property interests following tax lien sales."[155] Such speculation and conjecture is hardly persuasive. Ultimately, there is no substantive support for Debtor's expansive interpretation of *Tyler*.

Based upon the undisputed material facts before the Court, the Court finds Debtor cannot demonstrate a violation of the Takings Clause of the Fifth Amendment of the United States Constitution, and the Takings Clause of the Vermont Constitution, Chapter I, Article II as a matter of law. Accordingly, Defendants are entitled to judgment as a matter of law on Debtor's Fourth and Fifth Causes of Action.

### 2.      Violation of the Excessive Fines Clause.

Debtor claims the Town and Mr. Hooker both violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. The Eight Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[156] Debtor posits that his eventual forfeiture of the Property – including lost equity interest – constitutes an excessive fine against him. Conversely, the Town claims Vermont's tax sale regime pursuant to 32 V.S.A. §§ 5252 – 5262 is purely remedial, and because the tax sale suffered no procedural irregularities, no constitutional violation occurred. For the reasons articulated below, the Court agrees with the Town.

Before proceeding with its analysis, the Court first evaluates whether there can be an Excessive Fines Clause violation as to Mr. Hooker as a matter of law. The Excessive Fines Clause

---

[155] *Id.* at *4.

[156] U.S. Const. amend. VIII.

32

places limits on government actors' behavior, not individuals.[157] As previously explained, nothing in 32 V.S.A. §§ 5252 – 5262 empowers bidders to act on behalf of the government. Consequently, Mr. Hooker was not implicated in the statute's execution and Debtor's bare assertion, without argument or reference to competent summary judgment evidence, that the Town and Mr. Hooker "acted jointly" is unavailing.[158] Consequently, the Excessive Fines Clause does not apply to Mr. Hooker.

In consideration of the allegations as to the Town, the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."[159] It states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[160]

In the Second Circuit, courts employ a two-step inquiry to evaluate if there has been a violation of the Excessive Fines Clause.[161] First, a court assesses whether the Excessive Fines Clause applies at all,[162] which requires assessing whether a forfeiture is "characterized, at least in part, as punitive."[163] It follows that the Excessive Fines Clause does not apply to forfeitures that are "purely remedial."[164] If a court finds that the Excessive Fines Clause is applicable, it will then

---

[157] *See Timbs v. Indiana*, 586 U.S. 146, 151, 139 S.Ct. 682, 203 L.Ed. 2d 11 (2019); *Austin v. United States*, 509 U.S. 602, 609-10, 113 S.Ct. 2801, 125 L.Ed. 2d 488 (1993); *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024).

[158] As set forth above, those cases in which tax certificate purchasers step into the shoes of the government are inapposite.

[159] *Austin*, 509 U.S. at 609-10, 113 S.Ct. 2801 (internal quotations omitted).

[160] U.S. Const. amend. VIII.

[161] *See United States v. Viloski*, 814 F.3d 104,108-09 (2d Cir. 2016) (citing *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)).

[162] *Id.*

[163] *Id.* (internal quotations omitted)

[164] *Id.*

determine if the forfeiture is "constitutionally excessive."[165]

As a general matter, courts have consistently found that the government's collection of taxes and related fines is not considered punitive for purposes of the Eighth Amendment.[166] While there are certainly exceptions, instances where the Excessive Fines Clause has applied to state tax sale statutes are distinguishable.

In such cases, the statutory regimes in question either provided for the government to retain proceeds from a tax sale above what was owed or gave no mechanism to otherwise secure excess proceeds.[167] Vermont's statutory scheme is structured specifically so that the government does not receive any benefit beyond what is owed. In the event a tax sale pursuant to 32 V.S.A. §§ 5252 – 5262 results in property being deeded to a third-party, it requires any excess sale proceeds be transferred to the taxpayer, effectively compensating for lost equity. The statute provides a mechanism for the municipality to recover taxes owed, and nothing more. As written and as applied to the 2023 Tax Sale, 32 V.S.A. §§ 5252 – 5262 is purely remedial, and therefore the Excessive Fines Clause is not applicable.

There is no evidence that the Town deviated from the statute in its execution of the Tax

---

[165] *Id.*

[166] *See e.g., Dewees v. United States*, 272 F. Supp. 3d 96, 100 (D.D.C. 2017), *aff'd*, 767 F. App'x 4 (D.C. Cir. 2019) ("Tax penalties, by contrast, having been held to fulfill a remedial purpose are therefore not subject to the Excessive Fines Clause."); *In re Wyly*, 552 B.R. 338, 613 (Bankr. N.D. Tex. 2016) (Finding that "civil tax penalties such as the International Penalties are not fines, and therefore the Excessive Fines Clause is not applicable to them"); *Kitt v. United States*, 277 F.3d 1330, 1337 (Fed. Cir.), on reh'g in part, 288 F.3d 1355 (Fed. Cir. 2002) (Finding that a 10% tax imposed for IRA withdraw not a punishment); *Little v. Comm'r*, 106 F.3d 1445, 1455 (9th Cir. 1997); *McNichols v. Comm'r*, 13 F.3d 432, 434-35 (1st Cir. 1993). It may also be helpful to compare 32 V.S.A. §§ 5252 – 5262 to another Vermont tax related statute that was found to be partially punitive, *see Vermont Nat'l Tel. Co. v. Dep't of Taxes*, 2020 VT 83, 213 Vt. 421, 250 A.3d 567 (2020).

[167] *E.g., Cavaluzzi*, 2024 WL 5238644, at *9 (S.D.N.Y. 2024) (Possible Eighth Amendment claim "[t]urns on the County's retention of the surplus payment[.]"); *Sharritt v. Henry*, No. 23 C 15838, 2024 WL 4524501, *12-13 (N.D. Ill. Oct. 18, 2024) (Possible Eighth Amendment claim because the statute in question provided no guarantee of recovery and the total amount depended on the reviewing court's equitable balancing); *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 152 (N.D.N.Y. 2024) (Taxpayers plausibly alleged that retention of surplus proceeds constituted an excessive fine in violation of Eighth Amendment).

Sale or took any outside action that would be considered punitive. Debtor disagrees and posits that 32 V.S.A. §§ 5252 – 5262, at least as applied to him, is punitive in nature. Debtor claims he does not question the general constitutionality of 32 V.S.A. §§ 5252 – 5262.[168] Rather, Debtor asserts the 2023 Tax Sale was conducted in such a way that it constituted a violation of the Excessive Fines Clause as to Debtor.[169] Debtor argues that because he lost more equity in the Property than what was owed in taxes, the Tax Sale resulted in an excessive fine against him. This argument fails because it focuses on a result that is expressly provided for in Vermont's statutory scheme which Debtor concedes is generally constitutionally sound. If a taxpayer fails to exercise their right of redemption, the property **must** be deeded to the highest bidder.[170] The amount of excess proceeds turned over to the taxpayer after the sale directly correlates with the highest bid on the property, which is completely out of the government's control.

Debtor agrees the Town adhered to all the requirements of 32 V.S.A. §§ 5252 – 5262 in its execution of the 2023 Tax Sale. Debtor has provided no evidence of any deviation or action on behalf of the Town that renders the 2023 Tax Sale as constitutionally suspect. The Town followed the remedial statutory scheme and there were no irregularities with the 2023 Tax Sale, such that the result is not punitive and there is no violation.

Notwithstanding the foregoing, the Court would be remiss not to also address Debtor's related assertion that he is entitled to the fair market value of the Property (less the taxes owed). Debtor makes abundantly clear that he thinks the Property was purchased at the Tax Sale for far below its true value, and therefore the excess proceeds he received are insufficient to make up for

---

[168] Debtor's Opposition, ECF 39 at p. 3 ("Debtor is not claiming that 32 V.S.A. §§ 5251-5263 is unconstitutional on its face; he is claiming Defendants violated his constitutional rights under the facts and circumstances of this particular tax sale and the values involved."); *See also, Audio Recording of June 10, 2025 Hearing* at 12:45:40-12:46:53 p.m.

[169] *Id.*

[170] 32 V.S.A. § 5261.

his lost equity. While the Court acknowledges Debtor's frustration, there is no authority providing

a taxpayer may recoup the fair market value of property from a forced tax sale.[171]

## F.  Unjust Enrichment

In his Seventh Cause of Action, Debtor claims he is entitled to judgment as a matter of law

against Mr. Hooker in the amount of $341,173.38 for unjust enrichment under Vermont law.

Debtor claims Mr. Hooker received a "home equity windfall."[172] Under Vermont law:

> a party who receives a benefit must return [it] if retention would be
> inequitable. Unjust enrichment is present if, in light of the totality of the
> circumstances, equity and good conscience demand that the benefitted party
> return that which was given. Whether there is unjust enrichment present
> may not be determined from a limited inquiry confined to an isolated
> transaction. It must be a realistic determination based on a broad view of
> the human setting involved.[173]

Debtor asserts "equity and good conscience" require Mr. Hooker pay the excess value of the

Property to Debtor in the form of a judgment which should be entered as a matter of law.[174] Debtor

cites no case law in support of this statement. The Town submits that an unjust enrichment claim

fails as a matter of law because it runs afoul of Vermont Supreme Court precedent.[175]

Debtor's unjust enrichment claim is grounded in Vermont law and while the Court may

exercise "related to" jurisdiction over a non-core claim if its resolution could conceivably affect

the bankruptcy estate, the Court may not enter a final order on a non-core claim without the consent

of all parties.[176] Otherwise, its authority is limited to submitting proposed findings of fact and

---

[171] *Freed v. Thomas*, 81 F.4th 655, 658 (6th Cir. 2023).

[172] ECF 51 p. 26.

[173] *Mueller v. Mueller,* 2012 VT 59, 192 Vt. 85, 96, 54 A.3d 168 (2012) (internal citations omitted).

[174] ECF 51 p. 26.

[175] *See* ECF 55 p. 232 (*citing Westine v. Whitcomb, Clark & Moeser, et al.,* 150 Vt. 9, 547 A.2d 1349 (1988)).

[176] 28 U.S.C. § 157(c)(1)-(2); *see also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

conclusions of law to the district court.[177] Although none of the parties raised the issue of jurisdiction, the Scheduling Order entered into by the parties indicates that all parties do not consent to this Court's entry of a final order.[178] Consequently, summary judgment on the matter of unjust enrichment is denied as to both Debtor and the Town. The Court will hold a status conference to establish the procedure to determine Debtor's remaining cause of action.

CONCLUSION

For the reasons set forth above, the Court:

(1) grants summary judgment for the Town of Mount Holly and Defendant Thomas J. Hooker on Counts One through Six of Debtor's First Amended Adversary Complaint;

(2) denies summary judgment for the Town of Mount Holly and Defendant Thomas J. Hooker on Count Seven of Debtor's First Amended Adversary Complaint; and

(3) denies summary judgment for the Debtor.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue on the cross motions for summary judgment and the Court shall set a status conference to address the remaining state law claim of unjust enrichment.


August 8, 2025                                                Heather Z. Cooper
Burlington, Vermont                                          United States Bankruptcy Judge

---

[177] 28 U.S.C. § 157(c)(1).

[178] ECF 21.