U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 OCT 21 AM 9:19

CLERK

BY ____________
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DANIEL A. SUSCO and ANDREA CELLI, in her capacity as Chapter 13 Trustee,
Appellants,

v.

THOMAS J. HOOKER and TOWN OF MOUNT HOLLY,
Appellees.

Case No. 25-cv-00856

**ORDER AFFIRMING THE BANKRUPTCY COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF APPELLEES**

Appellants Daniel A. Susco and Andrea Celli, in her capacity as Mr. Susco's Chapter 13 trustee (referred to collectively as "Appellants"), appeal from two Orders issued by the United States Bankruptcy Court for the District of Vermont ("the Bankruptcy Court") granting Summary Judgment in favor of Appellees the Town of Mount Holly ("the Town") and Thomas J. Hooker (referred to collectively as "Appellees"). (Doc. 1.) Appellants seek to avoid the transfer of Mr. Susco's property ("the Property") to Mr. Hooker, which was effectuated pursuant to a forced tax sale conducted by the Town. (Doc. 2-2.) Shortly after the transfer of his property to Mr. Hooker, Mr. Susco filed for bankruptcy under Chapter 13 of the Bankruptcy Code, and Appellants commenced an adversary proceeding against Appellees. (*Id.*) In their Complaint, Appellants asserted that the transfer of Mr. Susco's property is avoidable under Chapter 11 of the Bankruptcy Code as either a constructively fraudulent transfer or a preferential transfer. (*Id.*) Appellants further alleged violations of the Excessive Fines and Takings Clause and Vermont's unjust enrichment law. (*Id.*) Appellants and Appellees each filed Motions for Summary Judgment. (Doc.

2-15, 2-19). Appellees also filed an opposition to Appellants' Motion for Summary Judgment. (Doc. 2-25.)

In an August 8, 2025 Order, the Bankruptcy Court granted summary judgment on Counts One through Six of Appellants' Amended Complaint in favor of Appellees and denied summary judgment to Appellants. *In re Susco*, 673 B.R. 120, 148 (Bankr. D. Vt. 2025). In a separate order, after the parties consented to its jurisdiction, the Bankruptcy Court granted summary judgment in favor of Appellees on Appellants' claim of unjust enrichment. *In re Susco*, 673 B.R. 322, 327 (Bankr. D. Vt. 2025).

Appellants did not brief their unjust enrichment claim for this appeal. (*See* Doc. 4.) In their Partial Withdrawal of Appeal on June 23, 2026, Appellants also withdrew their constitutional claims and asked this court to only review Appellants' avoidance actions under the Bankruptcy Code. (Doc. 11.) As a result, this court will only address Appellants' bankruptcy avoidance claims.

For the reasons stated below, the Bankruptcy Court's decision granting summary judgment in favor of Appellees and denying summary judgment to Appellants is AFFIRMED.

**Statement of Jurisdiction and Standard of Review**

This court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Markus*, 620 B.R. 31, 34 (S.D.N.Y. 2020) (citing *In re Bennett Fundings Grp., Inc.,* 146 F.3d 136, 138 (2d Cir. 1998)).

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56. Summary judgment is appropriate only where "there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018). Summary judgment is particularly

appropriate when the only issue is a question of law. *Flath v. Garrison Pub. Sch. Dist.*, 82 F.3d 244, 246 (8th Cir. 1996).

**Facts**

The facts in this case are largely undisputed, and the parties do not dispute the Bankruptcy Court's factual findings. Mr. Susco inherited the Property in 2011. (Doc. 2-2 at 3, ¶ 14.) Throughout the time he owned the property, Mr. Susco "consistently struggled to keep up with his property taxes." (*Id.* at 3, ¶ 18.) The Town initiated a tax sale of the Property to recover Mr. Susco's delinquent property taxes in June of 2017, but this sale was overturned by the Vermont Superior Court in 2022. (*Id.* at 3-4, ¶¶ 19–22.) Mr. Susco continued to fail to pay property taxes on the Property. *In re Susco*, 673 B.R. at 127. On April 18, 2023, the Town notified Mr. Susco about his outstanding property taxes and stated it would waive the accrued interest and penalties if Mr. Susco paid the outstanding taxes prior to any tax sale proceedings. *Id.* Mr. Susco did not provide any payment to the Town, and, as a result, the Town's tax collector executed a "Notice of Levy For Delinquent Taxes and Description of Property Levied Upon" on July 11, 2023. *Id.* The Notice included an announcement of the Town's intention to sell the Property by way of public auction on August 24, 2023. *Id.* The parties do not dispute that the Town complied with the applicable statutory procedures for tax sales contemplated by 32 V.S.A. § 5251 *et seq.*, including by providing Mr. Susco with adequate notice of the tax sale. *Id.* at 128.

On August 24, 2023, the Town held the tax sale. *Id.* Mr. Hooker's bid of $35,000 was the highest and winning bid. *Id.* The Town collected $23,635.67 of the sales price to recover "unpaid property taxes, interest, penalties, and legal costs[,]" and $329.36 of the sales price went to the Town's tax collector's fee. *Id.* Because Mr. Susco only owed $23,965.03 to satisfy his obligations, the Town paid the surplus of $11.034.97 to the Town's treasurer to hold in escrow pending either

the expiration of the one-year redemption period or Mr. Susco's exercise of his right of redemption. *Id.*

Mr. Susco failed to redeem the Property within his one-year right of redemption, and, as a result, the Town's tax collector issued a tax collector's deed to Mr. Hooker on August 26, 2024. (Doc. 2-2 at 4, ¶ 27.) Mr. Hooker took possession shortly thereafter. (*Id.* at 4, ¶¶ 29–31.) The Town then sent Mr. Susco a check for $11,361.59, representing the surplus, plus accrued interest. (Doc. 4 at 15; Doc. 2-20 at 15.) On September 27, 2024, Mr. Susco filed a Chapter 13 case in the District of Vermont. (Doc. 2-2 at 5, ¶ 35.) Soon after filing the Chapter 13 case, Appellants filed their Complaint to dispute the transfer of the Property. (*See generally id.*)

The only disputed fact identified by the parties is the Property's fair market value. Appellants claim the Property's market value is over $350,000. (Doc. 2-16 at 5, ¶¶ 27–30.) Appellees did not offer their own estimate of the Property's fair market value but disputed the validity of the appraisal upon which Appellants relied. (Doc. 2-25 at 29–31 ¶¶ 29–30.) In the proceedings below, the Bankruptcy Court declined to make any findings as to the Property's fair market value. *In re Susco*, 673 B.R. at 129. Instead, the Bankruptcy Court relied on the standard articulated in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) to determine whether the Property obtained its reasonably equivalent value. *Id.* at 138–40. As set forth below, this court agrees with the Bankruptcy Court's application of *BFP* and, as a result, agrees that the fair market value of the Property is immaterial. Accordingly, the court finds there are no disputes of material facts.

**Conclusions of Law and Analysis**

At issue on appeal are Appellants' claims under Chapter 11 of the Bankruptcy Code. Appellants first seek to avoid the transfer of the Property as a constructively fraudulent transfer

under 11 U.S.C. § 548(a)(1) or the corresponding Vermont fraudulent transfer statute, 9 V.S.A. § 2288. Appellants also seek to avoid the transfer of the Property as a preferential transfer to Mr. Hooker under 11 U.S.C. § 547(b). The court will address each of these arguments in turn.

## I. Appellants' Fraudulent Transfer Claim

Appellants seek to avoid the transfer of the Property as a constructively fraudulent transfer under Chapter 11 of the Bankruptcy Code or the Vermont fraudulent transfer statute. A transfer of a debtor's property is avoidable by the debtor's bankruptcy trustee as "constructively fraudulent" if "(1) the debtor had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received 'less than a reasonably equivalent value in exchange for such transfer[.]'" *Gunsalus v. Cnty. of Ontario, N.Y.*, 37 F.4th 859, 864 (2d Cir. 2022) (citing 11 U.S.C. § 548(a)(1)). A trustee may also avoid a transfer of a debtor's property as constructively fraudulent under corresponding state fraudulent transfer law. 11 U.S.C. § 544(b)(1). Because the Vermont fraudulent transfer statute, 9 V.S.A. § 2288, is substantially similar to Section 548, the two are addressed together in the following discussion. *See* 9 V.S.A. § 2288; 11 U.S.C. § 548(a)(1).

The parties agree this case solely concerns the fourth element articulated by the Second Circuit in *Gunsalus*: whether Appellants received the "reasonably equivalent value" of the Property from the tax sale. *See In re Susco*, 673 B.R. at 136. In the case below, Appellants argued that the transfer of the Property was for less than its "reasonably equivalent value" because the Property's $35,000 sales price was less than its estimated fair market value. (Doc. 2-18 at 13.) Appellees argued in response, as an issue of first impression in Vermont, that the Bankruptcy Court should adopt the presumption of reasonably equivalent value articulated in *BFP*. (Doc. 8 at 19.)

Appellees asserted the procedural protections in place for Vermont tax sales mirror the procedural protections the Supreme Court held in *BFP* were sufficient to create a presumption that a forced sale obtained the reasonably equivalent value of foreclosed property. (*Id.*) After a detailed analysis of Vermont's tax sale requirements and the decision in *BFP*, the Bankruptcy Court held that, in light of the procedural protections afforded under Vermont's tax sale statute, "whatever amount is realized upon [a non-collusive tax sale of real estate] is, by definition, reasonably equivalent value for bankruptcy avoidance purposes." *In re Susco*, 673 B.R. at 140.

**A. Background on *BFP***

The issue in this case, one of first impression, is whether the holding of *BFP* applies to a tax sale conducted in accordance with Vermont's tax sale statute. This requires a brief discussion of the Supreme Court's reasoning in *BFP*. The *BFP* Court addressed whether a "noncollusive[] real estate mortgage foreclosure sale conducted in conformance with applicable state law" could provide a debtor with the "reasonably equivalent value" of his property in accordance with Section 548 of Chapter 11 of the Bankruptcy Code. 511 U.S. at 533. There, the Court recognized that "market value, as it is commonly understood, has no applicability in the forced-sale context" because "'fair market value' presumes market conditions that... simply do not obtain in the context of a forced sale[.]" *Id.* at 537, 538. With those considerations in mind, the Court held that "a 'reasonably equivalent value' for foreclosed property, is the price in fact received at the foreclosure sale," when such a sale is conducted in accordance with state law providing procedural safeguards. *Id.* at 545. These safeguards include "notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures." *Id.* at 542. When such procedures

have been followed, the Court held that the "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside[.]"* *Id.*

### B. Applicability of the *BFP* Presumption of Reasonably Equivalent Value to a Forced Tax Sale Under Vermont Law

The *BFP* presumption of reasonably equivalent value is primarily concerned with process, rather than the type of sale. *In re Grandote Country Club Co., Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2001) ("[T]he decisive factor in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' is a state's procedure for tax sales[.]"). Several courts, after analyzing the factors stated by the Court in *BFP*, have extended *BFP*'s presumption of reasonably equivalent value to forced tax sales. *See, e.g.*, *In re Tracht Gut*, 836 F.3d 1146, 1149 (9th Cir. 2016) ("Because California tax sales have the same procedural safeguards as the California mortgage foreclosure sale at issue in *BFP*, we… hold that the price received at a California tax sale conducted in accordance with state law conclusively establishes 'reasonably equivalent value[.]'"); *In re Grandote*, 252 F.3d at 1152 (Extending *BFP*'s presumption of reasonably equivalent value to Colorado tax sales where a property was sold "under Colorado law subject to a competitive bidding procedure" in compliance with *BFP*'s procedural safeguards.); *In re Crespo*, 569 B.R. 624, 631 (E.D. Pa. 2017) (Extending *BFP*'s presumption of reasonably equivalent value to Pennsylvania tax sales because the law "affords the taxpayer the three key protections offered by foreclosure laws: notice, ample opportunity to cure, and strict adherence to statutory requirements.")

---

* The Court, however, did recognize that a foreclosure sale may be set aside under state foreclosure law, rather than fraudulent transfer law, "if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *BFP*, 511 U.S. at 542.

Other courts have declined to extend *BFP*'s presumption of reasonably equivalent value to tax sales. In these decisions, the courts have focused on the lack of procedural protections in the specific state's tax sale statute when compared to the procedures discussed in *BFP*. *See, e.g.*, *Gunsalus*, 37 F.4th at 866 (declining to extend *BFP*'s presumption of reasonably equivalent value to New York's tax sale process because the procedures are "fundamentally different from the protections in place in *BFP*[.]"); *In re Berley Assocs., Ltd.*, 492 B.R. 433, 440 (Bankr. D. N.J. 2013) (declining to extend *BFP*'s presumption of reasonably equivalent value due to "the absence of competitive bidding, together with appropriate advertising[.]"); *In re Wentworth*, 221 B.R. 316, 319–20 (Bankr. D. Conn. 1998) ("The rationale of the cases extending *BFP* to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight, without competitive bidding, and without a public sale.")

Vermont's tax sale statute, 32 V.S.A. § 5251 *et seq.*, conforms with the procedural safeguards contemplated by *BFP*. Under Vermont law, tax sales are subject to a competitive bidding process wherein the property is sold to the "highest bidder[,]" 32 V.S.A. § 5255, at a "public auction," *id.* § 5252(a)(2). The statute requires written notice via certified mail of the date and place of the sale at least thirty days prior to the sale. *Id.* § 5252(a)(3). The tax collector must also post notice of the sale in a public place in the town, *id.* § 5252(a)(5), and the sale must be advertised in a newspaper circulating in the vicinity for three successive weeks, *id.* § 5252(a)(2). A municipality cannot initiate a tax sale proceeding until it has "offered a delinquent taxpayer a written reasonable repayment plan" and given the taxpayer thirty days to respond. *Id.* § 5252(c)(1). After a tax sale, a debtor may exercise his right to redeem the property within one year of the tax sale. *Id.* § 5260(a).

There is no dispute that the prescribed bidding and auction procedures, or any of the other statutory requirements, were followed in this case. In the event that a tax sale fails to conform with legally prescribed standards, debtors may bring a suit to challenge the transfer as constructively fraudulent within two years per 9 V.S.A. § 2293(4). A debtor may also challenge the validity of the tax collector's actions on other grounds within a one-year statute of limitations. 32 V.S.A. § 5294(4); *see also Billewicz v. Town of Fair Haven*, 2021 VT 20, ¶ 23, 214 Vt. 511, 522, 254 A.3d 194, 202 (interpreting 32 V.S.A. § 5294(4)). In fact, Mr. Susco has successfully challenged a tax sale before, voiding the 2017 tax sale of the Property due to insufficient notice in violation of his due process rights. *Perrino v. Susco*, No. 102-2-19, 2022 WL 1242667 at *3 (Vt. Super. Ct. Mar. 15, 2022). In sum, the procedure and process embedded in Vermont's tax sale scheme is consistent with the procedure and process considered in *BFP*.

In an effort to demonstrate the inapplicability of the *BFP* presumption to Vermont tax sales conducted pursuant to 32 V.S.A. § 5251 *et seq.*, Appellants rely heavily on a single footnote in *BFP*. In this footnote, the Court stated "[w]e emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *BFP*, 511 U.S. at 537 n.3. Appellants place too much weight on this footnote. The Court explicitly limited its review to the issue before it and recognized that "considerations" in other types of sales "may be different." The footnote does not indicate that the considerations *are necessarily* different or preclude application of the presumption to tax sales. When reviewing Vermont's tax sale statute, as outlined above, the considerations do not appear to be different from those addressed by *BFP*.

**C. Appellants' Legislative Intent Arguments Fail to Demonstrate the Inapplicability of the *BFP* Presumption to Vermont Fraudulent Transfer Law**

**i. The Vermont Legislature's Codification of the *BFP* Presumption of Reasonably Equivalent Value for Mortgage Foreclosure Sales Does Not Forestall the Application of *BFP* to Vermont Tax Sales**

To support their challenge to the applicability of *BFP* to Vermont tax sales, Appellants point to changes in Vermont law regarding fraudulent transfers and tax sales. Appellants assert it is clear the Vermont legislature did not intend the *BFP* presumption of reasonably equivalent value to apply to the type of tax sale initiated by the Town. The court disagrees.

There are two different methods by which a town or municipality may collect delinquent property taxes under Vermont law. The first option is the tax sale process contemplated by 32 V.S.A. § 5251 *et seq.* (referred to hereinafter as a "Section 5252 tax sale"), which the Town employed in this case. A tax lien may also be foreclosed "in the same manner as provided by law for the foreclosure of mortgages on real estate." 32 V.S.A. § 5061(b). Appellants argue the existence of these two distinct methods is significant because the Vermont legislature chose to codify *BFP*'s presumption of reasonably equivalent value in the context of "default under a mortgage, deed of trust, or security agreement" and left out Section 5252 tax sales. *See* 9 V.S.A. § 2287(b) ("a person gives a reasonably equivalent value if the person acquires an interest of the debtor... pursuant to a regularly conducted, noncollusive foreclosure sale[.]"). Appellants assert, "[h]ad the Legislature desired the *BFP* presumption of reasonably equivalent value to apply in the tax sale context (as it did in the mortgage foreclosure context), it presumably would have done so expressly[.]" (Doc. 4 at 29.)

The language in Vermont's fraudulent transfer law does not forestall the application of the *BFP* presumption of reasonably equivalent value in this case. In fact, the purpose of *BFP* was to

create a method for determining what constitutes "reasonably equivalent value" in the absence of a clear definition. *BFP*, 511 U.S. at 537–38 (interpreting the "novel phrase" of "reasonably equivalent value."). The Vermont legislature codified the *BFP* presumption in 1996, only two years after the *BFP* decision was published. *See* An Act Relating to Nonprofit Corporations: Limited Liability Companies: and Fraudulent Transfers, No. 179, § 14 1996 Vt. Acts & Resolves 567, 697 (1996). The codification of the *BFP* presumption was part of the Vermont legislature's undertaking to repeal its former "fraudulent conveyances" statute and replace it with a "fraudulent transfer" statute which mirrored federal bankruptcy law. *Compare* An Act Relating to Nonprofit Corporations: Limited Liability Companies: and Fraudulent Transfers, No. 179, §§ 14–18 1996 Vt. Acts & Resolves 567, 694 (1996) *with* Act Effective April 26, 1947, ch. 364, §§ 8335–8337 1947 Vt. Acts and Resolves 1566, 1569 (1947) (repealed 1996). The legislature's choice to codify the *BFP* presumption was thus part of a broader effort to align Vermont law with federal law, demonstrating the Vermont legislature's willingness to conform to federal bankruptcy standards. It is also worth noting that, at the time of this legislative overhaul, the *BFP* decision was new, and courts were only beginning to analyze whether the *BFP* presumption of reasonably equivalent value was appropriate in the context of tax sales.

**ii. The Application of the *BFP* Presumption to Vermont Tax Sales Does Not Foreclose Debtors from Avoiding Transfers as Constructively Fraudulent**

Appellants further argue that applying *BFP* in the way the Bankruptcy Court did would "deem all successful tax sale bidders immune from fraudulent transfer suits[.]" (Doc. 4 at 29.) This, in the eyes of Appellants, would render the 2018 amendment to 9 V.S.A. § 2293 that created a two-year statute of limitations for bringing a fraudulent transfer claim arising out of 32 V.S.A, chapter 33, subchapter 9 (wherein the provisions regarding Section 5252 tax sales are codified) "toothless surplusage." *Id.*; *See* An Act Relating to the Statute of Limitations for Recovery and

Possession of Property Actions Against the Grantee of a Tax Collector's Deed, No. 117, § 1 2018 Vt. Acts & Resolves 192, 192 (2018).

Appellants overstate the impact of applying the *BFP* presumption. The *BFP* presumption of reasonably equivalent value only applies where the procedural protections contemplated by the statute at issue are actually followed. *See BFP*, 511 U.S. at 542 ("When these procedures have been *followed*... that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside[.]") (emphasis added). It follows from the *BFP* decision that a debtor may seek to avoid a tax sale for not obtaining a property's reasonably equivalent value based on noncompliance with the procedural safeguards contemplated by *BFP*. Appellants are thus incorrect in arguing that the *BFP* presumption prevents debtors from bringing a fraudulent transfer suit.

It is also worth noting that the amendment to 9 V.S.A. § 2293 was part of a broader effort to update the Vermont tax sale statute, including by imposing more stringent notice requirements on tax collectors, rather than an effort to update the Vermont fraudulent transfer statute. *See* An Act Relating to the Statute of Limitations for Recovery and Possession of Property Actions Against the Grantee of a Tax Collector's Deed, No. 117, § 3 2018 Vt. Acts & Resolves 192, 192–93 (2018). The choice to reference tax sales in 9 V.S.A. § 2293 also indicates the legislature's intent to bring tax sales under the ambit of Chapter 57 of the Vermont statutes, which mirrors the federal bankruptcy code and federal bankruptcy jurisprudence. Appellants fail to grapple with these aspects of the 2018 amendments that cut against their argument that the Vermont legislature did not intend for the *BFP* presumption to apply to Section 5252 tax sales. On the whole, Appellants' legislative intent arguments are unconvincing and fail to demonstrate why the *BFP* presumption of reasonably equivalent value should not apply to Vermont tax sales.

**D. Appellants' Attempts to Differentiate Vermont Tax Sales from Mortgage Foreclosure Sales and Tax Sales Governed by *BFP* Are Unconvincing**

Appellants further emphasize considerations that are not relevant under *BFP* to attempt to show that the *BFP* presumption of reasonably equivalent value should not apply to Section 5252 tax sales. Appellants argue that the fact that the property interest sold at a Section 5252 tax sale is subject to the debtor's right of redemption renders it "inferior." (Doc. 4 at 30–31.) Appellants assert this means "[a] rational bidder would not pay anything near the fair market value of the real estate offered at [a] tax sale because that is not what they receive." (*Id.* at 32.) Appellants also state that property purchased subject to a Section 5252 tax sale cannot be insured right away; that bidders cannot enter the property prior to the tax sale; and that the bidder may need to commence an eviction lawsuit to remove the debtor. (*Id.* at 33–34.) Appellants cite to no authority to support these claims but argue "[a] rational bidder would not bid anything near a property's inherent value in light of these risks." (*Id.* at 34.)

Appellants' arguments are unconvincing attempts to invite analysis of the Property's fair market value. The *BFP* Court expressly declined to consider fair market value because "market value… has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value." *BFP*, 511 U.S. at 537. As the Court noted, "it is no more realistic to ignore… the fact that state foreclosure law permits the mortgagee to sell it at forced sale[] than it is to ignore other price-affecting characteristics (such as the fact that state zoning law permits the owner of the neighboring lot to open a gas station)." *Id.* at 539. *BFP* is a case concerned primarily with the process by which a forced sale is carried out rather than the price a property obtained at a forced sale. *See id.* at 542 (listing relevant procedural protections to determine whether a property has received its reasonably equivalent value). The *BFP* Court also specifically noted that its goal was to defer to the "diverse networks of judicially and legislatively crafted rules governing the

foreclosure process" that each state has created to "balance... the needs of lenders and borrowers." *Id.* at 541–42. Therefore, decisions by the Vermont legislature governing tax sales that do not implicate the *BFP* factors, including whether an interest is sold subject to a right of redemption and what inspection rights a purchaser has, warrant deference from the court.

Appellants next argue that Section 5252 tax sales provide purchasers with inferior title such that the *BFP* presumption should not apply. Appellants assert decisions extending the *BFP* presumption have been with regard to tax sale statutes that provide that clean and marketable title must be sold at public auction. (Doc. 4 at 32–33 (citing *In re Tracht Gut*, 836 F.3d at 1149, 1153; *In re Grandote*, 252 F.3d at 1151.)) In both cases cited by Appellants, "clean and marketable title" did not factor into the court's decision. In keeping with other courts across the country, in each case, the court looked at whether the *BFP* factors applied to the tax sale in question when determining whether to adopt the presumption of reasonably equivalent value. In *In re Tracht Gut*, the California tax sale statute at issue provided that a debtor's right of redemption must expire prior to the commencement of a tax sale. 836 F.3d at 1153. The court did not mention this fact, however, to demonstrate that the extinguishment of the right of redemption provided "clear title." Rather, it was part of the court's *BFP* analysis finding that the lengthy redemption period (three years for commercial real estate, five years for residential real estate) provided "substantial lead time." *See id.* In *In re Grandote*, the court noted that the acquisition of real property under Colorado tax law conveys "virgin title" to resolve another aspect of plaintiff-appellant's argument before turning to analyze the tax sale statute's compliance with the *BFP* factors separate and apart from the "quality" of title sold. *In re Grandote*, 252 F.3d at 1152–53.

Additionally, even if this consideration were relevant, the claim that tax sales under Vermont law provide purchasers with an inferior property interest is unconvincing. Appellants

argue that a lesser property interest is sold under a Section 5252 tax sale because bidders purchase a right to have title transferred to them if the debtor fails to redeem the property. (Doc. 4 at 31.) If a debtor does not redeem, however, the purchaser does, in fact, receive clear title to the property in question. *See* 32 V.S.A. § 5261. Appellants' argument also fails to consider the fact that a mortgage foreclosure may also be said to convey an "uncertain" interest, as mortgage foreclosures are subject to judicial review and may be overturned by a reviewing court. *See* 12 V.S.A. § 4939. Yet, Appellants concede that the *BFP* presumption of reasonably equivalent value expressly applies to mortgage foreclosure sales in Vermont. (Doc. 4 at 28.); *see* 9 V.S.A. § 2287.

Appellants also under-emphasize the protections provided by Section 5252 tax sales in an effort to distinguish Section 5252 tax sales from mortgage foreclosures. Appellants argue, in a mortgage foreclosure sale conducted pursuant to Vermont law, "[t]he mortgagee cannot simply schedule a sale and conduct an auction a few weeks later for any amount in excess of its debt (as in a tax sale)." (Doc. 4 at 36.) This argument misrepresents the robust process that Section 5252 tax sales provide, which mirrors the Vermont mortgage foreclosure statute's procedural protections. Mortgage foreclosures by judicial sale contain nearly identical notice requirements to the Section 5252 tax sale process. *Compare* 12 V.S.A. § 4952(b), (c), *with* 32 V.S.A. § 5252(a)(2), (3), (5). Both statutes require the property to go to the "highest bidder," 12 V.S.A. § 4953(a), 32 V.S.A. § 5255, and provide a lengthy period of redemption, 12 V.S.A. § 4946(b), 32 V.S.A. § 5260(a). With regard to the *BFP* factors, the provisions governing mortgage foreclosures and Section 5252 tax sales contain nearly identical protections.

The decision in *BFP* focused on the procedures used to effectuate a forced sale of real estate rather than the price obtained at a forced sale. The Court recognized that considerations of "fair market value" are irrelevant to determining whether a property obtained its "reasonably

equivalent value" in a forced sale, as the strictures of a forced sale prevent typical market conditions from dictating a property's price. Although some forced tax sales may involve different considerations, Vermont's tax sale statute does not. For the reasons articulated above, the court affirms the Bankruptcy Court's decision to extend the *BFP* presumption of reasonably equivalent value to properly executed Section 5252 tax sales in the context of bankruptcy avoidance actions and affirms the Bankruptcy Court's decision to grant summary judgment in favor of Appellees on this claim.

**II. Appellants' Preferential Transfer Claim**

Appellants also seek to avoid the transfer of the Property to Mr. Hooker as "preferential" pursuant to Section 547(b) of Chapter 11 of the Bankruptcy Code. A transfer is avoidable as preferential where (1) there was a "transfer of an interest of the debtor in property"; (2) the transfer was "to or for the benefit of a creditor"; (3) "for or on account of an antecedent debt owed by the debtor before such transfer was made"; (4) the transfer was made "while the debtor was insolvent"; (5) "on or within 90 days before the date of the filing of the petition" for bankruptcy; and (6) the transfer must enable the creditor to "receive more than such creditor would receive if... the case were a case under chapter 7 of this title; the transfer had not been made; and such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b).

The Bankruptcy Court below held that elements one, four, and five were met. *In re Susco*, 673 B.R. at 133. On appeal, neither party disputes that these elements have been met. (*See* Doc. 4 at 40–41; Doc. 8 at 41–44.) The disputed issue on appeal is whether Mr. Hooker can be considered a "creditor" of Mr. Susco's such that the transfer of the Property to him may be avoided as preferential. Appellants posit both the expiration of Mr. Susco's right of redemption following

the tax sale and the issuance of the tax sale deed to Mr. Hooker constitute preferential transfers. (Doc. 4 at 40.)

A "creditor" under Chapter 11 of the Bankruptcy Code is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A), where a "claim" is defined as either a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, [or] contingent…" or a right to an equitable remedy if there is a breach of performance. *Id.* § 101(5). Appellants argue that "[b]y winning the tax sale auction, Mr. Hooker went from being a complete stranger to the Debtor to a person who held valuable 'claims' against the Debtor and his Property under the Code's broad definition." (Doc. 4 at 42.) Appellants assert Mr. Hooker had a right to be repaid via a redemption payment and that, though this was contingent on whether Mr. Susco redeemed, a contingent right is a "claim" under Section 101(5)(A). (*Id.*) Appellants also argue that Mr. Hooker's right to receive the tax collector's deed if Mr. Susco failed to redeem counted as an "inchoate right" which is a "claim" under Section 101(5)(A). (*Id.*)

Appellants assert the Bankruptcy Court construed the "broad" definition of "claim" too narrowly in holding that, because Mr. Hooker could not "demand or compel" Mr. Susco to make a redemption payment or issue a deed, he was not a "creditor." (Doc. 4 at 43 (citing *In re Susco*, 673 B.R. at 135.)) Appellants emphasize "a right to payment" is all that is required under Section 101(5). (*Id.*) Appellants add that the United States Supreme Court held "Congress intended [Section 101(5)] to adopt the broadest available definition of 'claim'[.]" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

The broad definition of "claim" in the Bankruptcy Code does not permit the court to find a "claim" where the debtor lacks an "enforceable obligation" to the purported creditor. *See Pa.*

*Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990) (interpreting the definition of "claim" under 11 U.S.C. § 101(5)). The Bankruptcy Code requires that a creditor have a "claim *against* the debtor[,]" *see* 11 U.S.C. § 101(10)(A) (emphasis added), suggesting a need for a direct relationship between the debtor and the creditor that the creditor may enforce. Appellants only cite cases in which a third-party purchaser purchased a tax certificate or lien and thus could directly enforce its right to payment against the debtor as a "creditor" pursuant to 11 U.S.C. § 101(10). *See In re Hackler and Stelzle-Hackler*, 938 F.3d 473, 475 (3d Cir. 2019) (allowing avoidance of a transfer of property as "preferential" where third-party purchaser purchased a tax lien and foreclosed on the property in question); *In re Tucker*, 653 B.R. 598, 601 (D. Md. 2023) (allowing avoidance of a transfer as "preferential" in a jurisdiction where a third-party purchaser buys a tax sale certificate, "which provides to the buyer a lien on the unpaid taxes and a potential future right to take ownership of the property if the debtor fails to satisfy the lien.").

Under Vermont law, unlike in the cases Appellants cite, there is no direct nexus between the debtor and the third-party purchaser in a Section 5252 tax sale. If the debtor timely redeems, then the debtor pays the requisite sum to "the collector who made the sale" or "to the town clerk[.]" 32 V.S.A. § 5260. If the debtor does not timely redeem, the collector executes the deed to the third-party purchaser. *Id.* § 5261. It is the collector or the town clerk, rather than the third-party purchaser, who has a direct connection to the debtor. There was no point during the tax sale process when Mr. Hooker could have demanded any payment from Mr. Susco. The deed to the property or the redemption payment would both have to come from the tax collector. Therefore, it cannot be said that Mr. Hooker had a "right to payment" from Mr. Susco such that he can be considered his creditor. As a result, the court does not address the remaining preferential transfer factors and holds that the transfer of the Property to Mr. Hooker cannot be avoided as "preferential." The

court affirms the Bankruptcy Court's grant of summary judgment in favor of Appellees on this claim.

**Conclusion**

Section 5252 tax sales contain the procedural protections articulated by the United States Supreme Court in *BFP*. As a result, the Bankruptcy Court did not err in determining the *BFP* presumption of reasonably equivalent value applies to Section 5252 tax sales in the context of bankruptcy avoidance actions. Because the tax sale at issue in this case complied with *BFP*, the Bankruptcy Court did not err in granting summary judgment on Appellants' fraudulent transfer claim in favor of Appellees. Because Mr. Hooker cannot be said to be Mr. Susco's creditor, the Bankruptcy Court did not err in granting summary judgment on Appellants' preferential transfer claim in favor of Appellees.

The Order of the United States Bankruptcy Court for the District of Vermont granting summary judgment to Appellees and denying summary judgment to Appellants is AFFIRMED.

DATED at Rutland, in the District of Vermont, this 21st day of October 2026.

Mary Kay Lanthier
United States District Judge